12-3779-ag
*Doe v. Holder*

# In the
# United States Court of Appeals
## For the Second Circuit

————

No. 12-3779-ag

————

JOHN DOE,
*Petitioner*,

*v.*

ERIC H. HOLDER, Jr., United States Attorney General,
*Respondent.*

————

Petition for review from the Board of Immigration Appeals.

————

ARGUED: MAY 29, 2014
DECIDED: AUGUST 19, 2014

————

Before: PARKER, LIVINGSTON, and DRONEY, *Circuit Judges*.

————

In this petition for review of a Board of Immigration Appeals ("BIA") decision, we consider whether the protection of witnesses provisions of the United Nations Convention Against Transnational Organized Crime ("CATOC") are self-executing. We hold that those provisions are not self-executing. Accordingly, the petition for review is **DENIED**.

————

WHITNEY W. ELLIOTT, Newark, New Jersey, *for* John Doe.

JESSICA A. DAWGERT, Trial Attorney (Stuart F. Delery, Acting Assistant Attorney General, Leslie McKay, Assistant Director, Margot L. Carter, Trial Attorney, *on the brief*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Eric H. Holder, Jr., United States Attorney General*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

In this petition for review of a Board of Immigration Appeals ("BIA") decision, we consider whether the protection of witnesses provisions of the United Nations Convention Against Transnational Organized Crime, *opened for signature* Dec. 12, 2000, T.I.A.S. 13127, 2225 U.N.T.S. 209 ("CATOC")[1] are self-executing. We hold that those provisions are not self-executing. Accordingly, the petition for review is **DENIED**.

---

[1] The CATOC is a treaty signed and ratified by the United States.

## I. BACKGROUND

Petitioner, John Doe, a native and citizen of Ghana, was a lawful permanent resident of the United States when he was arrested after admitting he expected to receive a package addressed to him that contained a quantity of heroin. Following his arrest, Doe admitted to participating in an international drug smuggling ring. Doe cooperated with federal agents to arrange a controlled delivery of the heroin to another individual in this country. The controlled delivery led to the arrest of one of the individuals who had hired Doe to receive the heroin. That individual was ultimately convicted and imprisoned.

Doe pled guilty to an information including a count related to his heroin smuggling activities. The Department of Homeland Security issued a Notice to Appear, alleging that Doe was removable from the United States based on his conviction for an aggravated felony and controlled substance offense. Doe's attorney inquired about an S visa,[2] available to certain non-citizens who assist with

---

[2] An "S visa" refers to the nonimmigrant classification for aliens who cooperate in criminal or terrorism investigations. *See* 8 U.S.C. § 1101(a)(15)(S). As relevant to this appeal, S visas are available to an alien who "is in possession of critical reliable information concerning a criminal organization or enterprise," "is willing to supply or has supplied such information" to law enforcement authorities or the courts, and whose presence is essential to the success of the investigation or prosecution as determined by the Attorney General. *Id.* A law enforcement agency must apply for an S visa on behalf of a cooperating witness. 8 C.F.R. § 214.2(t). The S visa application requires the law enforcement agency seeking the visa to specify whether the alien will be placed in danger in the United States and/or abroad due to his or her cooperation. *See* Form I-854 (available at www.uscis.gov/sites/default/files/files/form/i-854.pdf).

An S visa is a temporary visa that allows an alien to remain in the country for three years. 8 U.S.C. § 1184(k)(2). During that period, however, the sponsoring law enforcement agency may request that the Department of Homeland Security adjust the status of an

criminal investigations, but the Assistant United States Attorney assigned to Doe's case elected not to request such a visa on Doe's behalf in exchange for his cooperation. In immigration court, Doe admitted the factual allegations in the Notice to Appear and conceded removability, but sought protection from removal under the United Nations Convention Against Torture ("CAT") and the CATOC.

At the conclusion of the removal proceedings, the Immigration Judge denied Doe's request for protection under the CAT and noted that the request for protection under the CATOC was outside the immigration court's jurisdiction. Doe appealed to the BIA, raising his CAT and CATOC claims, as well as two new arguments based on the "state-created danger" doctrine and equitable estoppel. The BIA rejected all four claims and dismissed the appeal. The BIA concluded that it lacked jurisdiction to consider claims for relief under the CATOC because the Attorney General had not delegated authority over such requests to immigration judges or to the BIA.

Doe now seeks review of the decision of the BIA affirming the decision of the Immigration Judge. Because Doe does not challenge the agency's denial of CAT relief, equitable estoppel, and relief under the state-created danger doctrine, those arguments are not before us and we address only his assertion that he is entitled to relief as a criminal informant under the CATOC. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005). On appeal, Doe primarily contends that the CATOC is a self-executing treaty that he

---

individual with an S visa to that of lawful permanent resident. 8 U.S.C. § 1255(j).

can enforce through a private right of action in this Court, independent of any delegation of authority to the BIA.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Although in most circumstances, we lack jurisdiction to adjudicate petitions for review from aliens such as Doe who have been convicted of a controlled substance offense, *see* 8 U.S.C. § 1252(a)(2)(C), because his petition raises a legal issue, we have jurisdiction to hear his claim pursuant to 8 U.S.C. § 1252(a)(2)(D).

In deciding a petition for review of a BIA order, we ordinarily review the BIA's decision alone. Where, as here, the BIA has adopted and supplemented the Immigration Judge's decision, however, we review that decision as supplemented by the BIA. *See Santoso v. Holder*, 580 F.3d 110, 111 (2d Cir. 2009) (per curiam).

Where a petitioner raises a question of law, we review agency determinations *de novo*. *Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010) (per curiam). Although we accord significant deference to BIA interpretations of the statute it administers, *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008), we will not defer to the BIA's interpretation of the CATOC because it has not been charged with administration of its provisions, *see Michel v. I.N.S.*, 206 F.3d 253, 262 (2d Cir. 2000) (holding that deference to BIA interpretations is not afforded where the BIA is not interpreting laws it administers). We therefore review the BIA's decision on Doe's CATOC claim *de novo*. *See Swarna v. Al-Awadi*, 622 F.3d 123, 132 (2d Cir. 2010) (explaining that we review

treaty interpretation by a lower court *de novo*).  However, even though our review of the BIA's decision is *de novo*, we do not ignore the government's views entirely.  The Supreme Court has explained that "the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight," though it is "not conclusive."  *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982); *see also Pierre v. Gonzales*, 502 F.3d 109, 116 (2d Cir. 2007) ("In construing treaty language, respect is ordinarily due the reasonable views of the Executive Branch." (internal quotation marks and alterations omitted)).  Thus, while the BIA's interpretation of the CATOC is not entitled to deference, the views of the Executive Branch agencies, such as the Department of State, that were and are "charged with the[] negotiation and enforcement" of the treaty are "entitled to great weight."  *Sumitomo*, 457 U.S. at 184-85.

## B. The Witness Protection Provisions of the CATOC Are Not Self-Executing

This Court has not determined whether the witness protection provisions of the CATOC are self-executing and, therefore, enforceable in agency removal proceedings or in the courts.  *See Rranci v. Attorney General*, 540 F.3d 165, 179 (3d Cir. 2008) (remanding the issue to the BIA for guidance); *see also Musau v. Carlson*, 499 F. App'x 837, 841-42 (10th Cir. 2012).  The BIA has determined that those provisions are not.  *See In re G-K-*, 26 I. & N. Dec. 88, 95 (BIA 2013).  As noted above, we review this conclusion *de novo*, without deference to the BIA's interpretation

As the Supreme Court explained, courts have "long recognized the distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law." *Medellín v. Texas*, 552 U.S. 491, 504 (2008). "[A] treaty is equivalent to an act of the legislature, and hence self-executing, when it operates of itself without the aid of any legislative provision." *Id.* at 505 (internal quotation marks omitted). "[W]hile treaties may comprise international commitments[,] they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Id.* (internal quotation marks and alterations omitted); *see also United States v. Bahel*, 662 F.3d 610, 629 (2d Cir. 2011) ("[I]n order for a treaty to be self-executing, and thus not require independent action from Congress, the treaty's terms must reflect such an intention by both the President, who negotiated it, and the Senate, which provided its advice and consent.").

To determine whether a treaty is self-executing, we begin with the text. *Mora v. New York*, 524 F.3d 183, 194 (2d Cir. 2008). Aspirational language is the hallmark of a non-self-executing treaty because it describes only a "commitment . . . to take future action through [the member states'] political branches to comply with [the treaty]." *Medellín*, 552 U.S. at 508 (internal quotation marks and emphasis omitted). Such is the case when the treaty provides that the parties "undertake[] to comply," as opposed to "shall" or "must" comply, with its terms. *Id.* However, even mandatory language may not be conclusive evidence that a provision is self-executing if

the context and treaty objectives indicate otherwise. *See Mora*, 524 F.3d at 194 (explaining that treaty interpretation requires consideration of not only the text of the treaty, but also "the context in which the written words are used").

The CATOC's stated purpose is to "promote cooperation to prevent and combat transnational organized crime more effectively." CATOC, art. 1. Article 24, titled "Protection of witnesses," provides:

> Each State Party shall take appropriate measures within its means to provide effective protection from potential retaliation or intimidation for witnesses in criminal proceedings who give testimony concerning offences covered by [the] Convention . . . .

*Id.*, art. 24. Doe argues that Article 24's mandate, that the United States "*shall* take appropriate measures" to protect witnesses, indicates a non-discretionary obligation. But we believe that this provision, when taken in context, reflects only a non-self-executing undertaking. Under the CATOC, the signatories commit to provide "effective" witness protection, art. 24, to encourage "cooperation to prevent and combat transnational organized crime," art. 1. "Effective" protection is not specifically defined. Rather, Article 24 explains later that such protection "may" consist of, "*inter alia*," physical protection, relocation, non-disclosure of the witness's identity and location, and the use of video-link testimony. It is therefore left to the signatory's discretion to determine what measures are "appropriate" and "within its means," and what

protection is sufficiently "effective," suggesting that the provision has no immediate legal effect.  *See In re G-K-*, 26 I. & N. Dec. at 94-95.

Other provisions of the CATOC support this view.  Article 34, titled "Implementation of the Convention," states that "[e]ach State Party shall take necessary measures, *including legislative and administrative measures*, . . . to ensure the implementation of its obligations under this Convention."  CATOC, art. 34 (emphasis added).  Thus, the CATOC specifically envisions that it will be implemented by additional domestic legislative actions.  Moreover, a signatory must "take necessary measures" only "in accordance with fundamental principles of its domestic law."  *Id.*  A State Party's commitments under CATOC are, therefore, secondary to the "fundamental principles of its domestic law."  *Id.*  Because a signatory must in the first instance determine what measures comply both with its treaty obligations and its domestic law, the CATOC's text indicates that Article 24 is not self-executing.  *See Medellín*, 552 U.S. at 508.

The Executive and Legislative Branches have reached the same conclusion.  When submitting the treaty to the President, the Secretary of State explained that the witness protection measures under Article 24 are undertaken "in [a State Party's] discretion," and recommended that the Senate include a declaration that the only exceptions to the "general understanding that the provisions of the [CATOC] are non-self-executing" are the detailed provisions of Articles 16 and 18.  *See* S. Treaty Doc. No. 108-16.  The Secretary of State added that Article 24 could be implemented by the United States under current statutes and regulations.  In his letter

transmitting the treaty to the Senate for ratification, the President explained that the Convention would not require implementing legislation. *Id.*

Doe argues that the Executive Branch's interpretation is not entitled to deference because Congress rejected it. However, independent of Congress's interpretation, "the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo*, 457 U.S. at 184-85 (deferring to the Department of State's interpretation). Moreover, contrary to Doe's assertion, Congress did not disagree with the Executive's interpretation. Although the Senate did not include a declaration concerning whether the witness protection provisions were self-executing when ratifying the CATOC, it noted in its summary that Articles 16 and 18 *are* self-executing, thereby implying that the other articles are not. *See* S. Exec. Rep. No. 109-4, at 6-7 (2005); *see also Guo v. Dep't of Justice*, 422 F.3d 61, 64 (2d Cir. 2005) (discussing statutory construction principle that the expression of one thing is the exclusion of another). The Senate was apparently also of the view that implementing legislation was not necessary because the "existing body of federal and state laws [] suffice," but for the few exceptions it adopted from the Executive Branch's submission. *See* S. Exec. Rep. No. 109-4, at 4-5. These statements demonstrate to us that both the Executive and Legislative Branches deemed Article 24 non-self-executing, a conclusion to which we are obligated to give great weight. *See Sumitomo*, 457 U.S. at 184-85. Accordingly, because the CATOC does not "operate[] of itself without the aid of any legislative provision,"

but rather is implemented by domestic legislation, it is not "self-executing." *Medellín*, 552 U.S. at 505

As a non-self-executing treaty provision, Article 24 could not be enforced absent implementing legislation. And Congress has not passed new implementing legislation because, as it declared, that legislation already existed. Indeed, in the immigration context, there are numerous protections for witnesses: those assisting in the investigation or prosecution of organized crime, human trafficking, and other criminal activity may be granted nonimmigrant status, *see* 8 U.S.C. § 1101(a)(15)(S), (T), (U), and the CAT prohibits removal if torture in the country of removal is likely, *see* 8 C.F.R. §§ 1208.16 (CAT withholding of removal), 1208.17 (CAT deferral of removal). Doe exhausted the applicable avenues of relief. Although he argues that the CATOC envisaged greater protection, the relief he seeks cannot be enforced by the Board, the district court, or this court because the treaty is not self-executing.

## CONCLUSION

The petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.